## · FELT v. BUSH et al.

No. 2379.   Decided September 6, 1912 (126 Pac. 688).

1. BILLS AND NOTES—"HOLDER FOR VALUE"—COLLATERAL SECURITY.
   Under Negotiable Instrument Law (Comp. Laws 1907, section
   1577), which provides that an antecedent or pre-existing debt
   may constitute value, whether the instrument is payable at de-
   mand or at a future time, section 1578, which provides that,
   where value has at any time been given for the instrument,
   the holder is deemed a holder for value as to all parties who
   became such prior to that time, and section 1579, which provides
   that, where the holder has a lien on the instrument, he is
   deemed a holder for value to the extent of his lien, an indorsee
   of negotiable paper who received it before maturity as col-
   lateral for a pre-existing debt, without any further considera-
   tion, and without notice of equities or infirmities, is a holder
   for value, and will be protected against payments made to the
   original payee before maturity, and before the note was indorsed
   and delivered.   (Page 464.)

2. BILLS AND NOTES—HOLDER FOR VALUE—COLLATERAL SECURITY.
   An indorsee of a note transferred as security for a debt is not
   rendered other than a holder for value by Comp. Laws, section
   1606, which provides that when a transferee receives notice of
   any infirmity in the instrument, or defect in the title of the
   person negotiating the same before he has paid the full amount
   agreed to be paid therefor, he will be deemed a holder in due
   course, only to the extent of the amount theretofore paid by him,
   as that section is intended merely to limit the indorsee's
   recovery to the amount he had advanced before obtaining notice
   of some infirmity, and not to affect his fundamental relation
   to the debtor.   (Page 468.)

APPEAL from District Court, Third District; *Hon. M. L.
Ritchie,* Judge.

Action by George F. Felt against R. N. Bush and an-
other.

Judgment for defendants.   Plaintiff appeals.

REVERSED WITH DIRECTIONS TO GRANT NEW TRIAL.

*King, Nibley & Russell* for appellant.

*L. L. Baker* for respondents.

FRICK, C. J.

Appellant, as indorsee of a negotiable promissory note, sued the respondents as the makers thereof. Judgment was entered in favor of respondents, from which appellant has appealed to this court.

The material facts, briefly stated, are as follows:

On August 24, 1907, respondents made and delivered their certain promissory note for the sum of $519, payable in three years from date, with eight per cent. interest to one James D. Lewis or order. On January 8, 1908, respondents made a payment of $100 on said note, which was indorsed thereon, and thereafter paid $300 more to be applied thereon, but which was not indorsed on the note, leaving, as respondents believed, unpaid of the principal of said note the sum of $119. Afterwards, to wit, on August 1, 1908, said Lewis, as evidence of an indebtedness for lumber theretofore purchased from appellant, made and delivered his certain promissory note for the sum of $519 payable —— after date to appellant or order, and, as collateral security to secure the payment of said note, indorsed and delivered to appellant the note sued on in this action. The only payment that was indorsed on the note sued on was the sum of $100, and appellant received and accepted the note without notice of any payments except said sum, and received the same in due course of business and in good faith before maturity. Before this action was commenced, respondents offered to pay and tendered appellant the sum of $119.75, the amount they believed to be due on said note, and appellant refused to receive the same, and brought this action to recover the whole amount except the $100 aforesaid.

The attorneys representing the parties to this action agree upon and insist that the only question to be decided by this court is whether, under our statute (Comp. Laws

1907, secs. 1577, 1578, 1579, 1606), an indorsee of negotiable paper who received it before maturity in due course of business as collateral security for a pre-existing debt without any further consideration, and without notice of equities or infirmities, is a holder for value so as to protect him against payments that were made to the original payee before maturity and before the note was indorsed and delivered as aforesaid. The authorities in this country have always been divided upon the foregoing proposition. A majority of the state courts of last resort and all of the Federal courts, including the Supreme Court of the United States, have always answered the foregoing question in the affirmative. Upon the other hand, there has always been a very respectable minority of courts of last resort, the New York Court of Appeals leading the list, which has held that, unless there is some independent consideration for the transfer, the taking of a negotiable instrument in due course of business before maturity and without notice as security for a pre-existing debt does not constitute the indorsee a holder for value, and hence he takes the instrument subject to all existing equities between the parties thereto. We shall not pause here to refer to the cases, or even to the courts, that have ranged themselves upon one side or the other. The reader who desires to learn the precise view that is taken by the different state and Federal courts upon either or both sides of the question can do so by referring to the following text-books, namely: Selover on Neg. Insts. (2 Ed.) pp. 217-221; Ogden, Neg. Insts., sec. 128, p. 114 *et seq.;* Crawford's Ann. Neg. Insts. L. (3 Ed.) 39-41; Brannan's Neg. Inst. L. (2 Ed.) 32-35. See, also, 7 Cyc. 932, where the cases for and against the proposition are collated.

In view that the question is novel in this jurisdiction, and because of its importance, we shall briefly refer to the latest cases in which the negotiable instruments law is construed and applied to the question now under consideration. The parts of the negotiable instruments law that are directly involved are found in Comp. Laws 1907, in the following sections:

"Sec. 1577. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time.

"Sec. 1578. Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time.

"Sec. 1579. Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

Respondents' counsel contends that section 1606 of that compilation should also be considered in connection with the foregoing sections. That section reads as follows:

"When the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

The first three sections referred to above have in the following recent decisions been construed and applied.

In *Brooks v. Sullivan,* 129 N. C. 190, 39 S. E. 822, decided in 1901, the Supreme Court of North Carolina assumes without comment that the first three sections of the negotiable instruments law above quoted required the court to hold that the transfer of a negotiable instrument before due in due course of business and without notice as collateral security for a pre-existing debt constitutes the transferee a holder for value, and as such is protected the same as any innocent purchaser for value before maturity and without notice of equities or infirmities would be. The Supreme Court of North Carolina prior to this decision had held to the contrary doctrine.

*Graham v. Smith,* 155 Mich. 65, 118 N. W. 726, decided in 1908, takes precisely the same view that is taken by the Supreme Court of North Carolina. The Michigan court also changed its holdings, as it is said, to harmonize them with the negotiable instruments law.

*Payne v. Zell,* 98 Va. 297, 36 S. E. 379, decided in 1900, in construing the provisions of the negotiable instruments law referred to, holds the same doctrine laid down in the foregoing two cases.

*Voss v. Chamberlain,* 139 Iowa, 573, 574, 117 N. W. 269, 19 L. R. A. (N. S.) 106, 130 Am. St. Rep. 331, decided in 1908, adopts the rule laid down in the foregoing three cases. In the Iowa case there was perhaps some additional consideration which would have been held sufficient under the minority rule, but the court places the decision upon both grounds; that is, upon the new instruments law and also upon the additional consideration if indeed there was such. It is assumed by the Iowa court without discussion that the negotiable instruments law makes a holder under the facts and circumstances we have set forth above a holder for value, and as such is protected against prior equities of which he had no notice.

The case of *Commercial Bank v. State Bank,* 132 Iowa, 706, 109 N. W. 198, which, in some respects, may be said to differ from the doctrine laid down in the Voss Case, is not referred to in the later case. In a later case still, however, namely, *Iowa National Bank v. Custer,* 144 Iowa, 715, 123 N. W. 237, the Voss Case is referred to, and it is assumed in the later case that the question was decided in accordance with the holdings referred to in North Carolina and Michigan.

In *Birket v. Elward,* 68 Kan. 295, 74 Pac. 1100, 64 L. R. A. 568, 104 Am. St. Rep. 405, 1 Ann. Cas. 272, decided in 1904, the Supreme Court of Kansas squarely holds that an indorsee of a negotiable instrument taken as collateral security for a pre-existing debt without any other or further consideration is a holder for value, and thus protected against all claims of payments made to the original holder of which the indorsee had no knowledge or notice. The Kansas court also places the ruling squarely upon the negotiable instruments law. The later case is reported in 1 Ann. Cas. 272, where, in a note, the cases for and against the question are collated.

*In re Hopper-Morgan Co.,* 154 Fed. 249, decided in 1907, the United States District Court for the Northern District of New York goes thoroughly over the precise question now under consideration. The particular sections of the negotiable instruments law in question here are there construed and applied, and it is squarely held that that law changed the existing rule in New York. In that case the later decisions of several of the Appellate Divisions of the Supreme Court of New York are reviewed, and it is pointed out that, while in two cases (*Brewster v. Shrader,* 26 Misc. Rep. 480, 57 N. Y. Supp. 607 and *Petrie v. Miller,* 57 App. Div. 17, 67 N. Y. Supp. 1042) it is squarely held that the law upon the subject has been changed in New York, there are also three cases (*Sutherland v. Mead,* 80 App. Div. 103, 80 N. Y. Supp. 504; *Roseman v. Mahony,* 86 App. Div. 377, 83 N. Y. Supp. 749, and *Harris v. Fowler,* 59 Misc. Rep. 523, 110 N. Y. Supp. 987) in which a contrary conclusion was reached. The intermediate courts of New York are therefore divided upon the question, and in view that the negotiable instruments law has never been passed on by the Court of Appeals, which is the court of last resort, the Federal court in the decision just referred to construed that law and in effect held that under it, in the interest of uniformity, the courts were required to hold that in New York, as in all other jurisdictions where the law has been adopted, an indorsee of negotiable paper who without notice takes it as collateral security for a pre-existing debt without further consideration is a holder in due course for value.

In *Wilkins v. Usher,* 123 Ky. 697-702, 97 S. W. 37, it is squarely held that the law in Kentucky under the negotiable instruments law is now settled in conformity with the majority rule. To the same effect is *Campbell v. Bank,* 137 Ky. 555, 126 S. W. 114.

An intelligent discussion is found in a note to *Exchange National Bank v. Coe,* reported in 31 L. R. A. (N. S.) 287, where the cases are again reviewed on both sides.

We have referred only to such cases as had under consideration the precise question presented for decision here, and,

so far as we have been able to discover, all the courts which
have had occasion to construe the negotiable instruments law
have held that regardless of what the law upon the subject
may have been in those states, under the provisions of that
law an indorsee of negotiable paper before due and without
notice of existing equities or infirmities, although he receives
it as collateral security for a pre-existing debt without any
further consideration, is nevertheless a holder in due course
for value. The question, therefore, it seems to us, has passed
beyond the domain of judicial discussion. As we under-
stand it, the negotiable instruments law was intended to
give legislative sanction to the majority rule to which ref-
erence has been made and was conceived by its authors and
adopted by the different state legislatures for the express
purpose of harmonizing the conflicting decisions which had
been rendered on the subject of negotiable instruments and
the rights of those interested therein whose rights were ac-
quired before maturity. As we view it, therefore, it is our
plain duty to follow the numerous decisions that have directly
passed upon the negotiable instruments law, and have con-
strued it in accordance with the majority rule. The question
is one of business expediency, and not of logic or equity as
applied to an individual case.

Neither do we see how section 1606 has any bearing upon
the question. That section was not intended to have, nor
does it have, any bearing upon the rights of an in-
dorsee who receives negotiable paper before maturity       2
in due course, and without notice of infirmities. All
that section was intended to accomplish was to limit the in-
dorsee's recovery to the amount he had advanced before ob-
taining notice of some infirmity in the paper. His relation
to the paper was not intended to be, and is not, affected by
such notice, but it merely affects the extent of his recovery.
The section is in perfect harmony with the other sections,
and is likewise in harmony with the rule that we are follow-
ing in this case.

In view of what has been said, we are forced to the conclusion that the question submitted to us must be answered in the affirmative.

The judgment of the district court is therefore reversed, with directions to grant a new trial, appellant to recover costs.

McCARTY and STRAUP, JJ., concur.