JAMES H. MACKINTOSH, EXECUTOR OF SARAH F. MACK-
    INTOSH, PLAINTIFF IN ERROR, v. ELLA J. GIBBS AND
    COLEMAN A. GIBBS, DEFENDANTS IN ERROR.

Submitted March 19, 1909—Decided November 30, 1909.

1. A note executed and delivered in 1901 in California, secured by
    mortgage on land in that state, and non-negotiable by the local·
    law, was transferred by endorsement in New Jersey after the
    passage of the Negotiable Instruments act. *Pamph. L.* 1902, *p.*
    583. *Held*, that the validity and effect of the contract of the
    endorsers was determined by that act.
2. The contract of endorsers of a negotiable note is distinct from that
    of the makers; and the holder is not precluded from recovery of
    endorsers who had endorsed the note in New Jersey by reason
    of the fact that the note was given in California and secured by
    mortgage on land in that state, which was subsequently foreclosed,
    although the California code enacts that there shall be but one
    action for the recovery of any debt or the enforcement of any
    right secured by a mortgage upon real estate in California.
3. An executor may in that capacity sue in our courts endorsers
    upon a promissory note which was endorsed and delivered to his
    testatrix in New Jersey, although a mortgage on California land
    securing the note, given by the makers, has been foreclosed and
    a deficiency judgment obtained in California by an administrator
    with the will annexed, and the estate has been finally settled in
    that state.

On error to the Monmouth Common Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE
and PARKER.

For the plaintiff in error, *Patterson & Rhome.*

For the defendants in error, *John T. Temple.*

The opinion of the court was delivered by

SWAYZE, J. This was an action brought against the en-
dorsers of a promissory note, of which the following is a copy:

"$3,500.00.          SAN DIEGO, CAL., October 7th, 1901.

"Two years after date, without grace, for value received, I promise to pay to the order of Ella J. Gibbs, at the First National Bank of San Diego, Thirty-five hundred Dollars, with interest at the rate of 5 per cent. per annum from October 7th, until paid, interest payable semi-annually, and if not so paid to be compounded with and bear the same rate of interest as the principal; and should the interest not be paid when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note. Principal and interest payable in gold coin of the United States. Should suit be commenced, or an attorney employed to enforce the payment of this note, I agree to pay an additional sum of 6 per cent. on principal and accrued interest as attorney's fees in such suit.

"Internal Revenue Stamp.          ROBERT F. HIBSON.

    "Witness:

       "Foster M. Voorhees.

       "H. E. Nelles."

The note was secured by a mortgage of even date on California lands; in 1902 Mrs. Gibbs assigned the note and mortgage to her husband, Coleman A. Gibbs, the other defendant, in California, for the purpose of enabling him to effect the sale thereof; on May 16th, 1903, the two defendants assigned the note and mortgage to Sarah F. Mackintosh, the plaintiff's testatrix, and endorsed the note in blank and delivered the note and mortgage to her in Asbury Park, New Jersey; on October 7th, 1903, the note was presented for payment at the bank where payable and payment refused; on the following day payment was again demanded and refused and the note protested and notice of the protest and demand mailed to each defendant; in 1905 the mortgage was foreclosed in California by the administrator with the will annexed of Sarah F. Mackintosh, to which suit the present defendants were not made parties: there was a deficiency judgment in the foreclosure, and the final account of the administrator with the will annexed was allowed by the California court,

October 12th, 1906, and a decree of distribution made, directing the administrator to distribute the decedent's estate to the plaintiff herein, James H. Mackintosh; in the assignment of the mortgage from the defendants to the plaintiff's testatrix it was stated that the time of payment of the mortgage had been extended two years from the date when due, but no notice of this extension was made on the note. The trial judge found as a fact that by the civil code of California there can be but one action for the recovery of any debt or the enforcement of any right secured by a mortgage upon real estate in California. He conceived that the plaintiff was barred of any recovery by reason of this provision of the California code. In his opinion he intimated also that the plaintiff was not entitled to recover because he brought this suit in a representative capacity, while under the decree of distribution he was individually the owner of the note and mortgage. He found the facts specially and did not find generally for the defendants, and it is the judgment on his findings which is presented for review by proper exceptions taken to his refusal to find in accordance with the requests of the plaintiff that the plaintiff was not obliged, in order to recover in this state, to have made the defendants parties to the foreclosure suit in California, and that the plaintiff had a legal right to maintain the suit and recover against the defendants on the ground that their endorsement of the note and the delivery of the same to the plaintiff's intestate in New Jersey constituted an independent valid contract between the defendants and the plaintiff's intestate and the defendants could be held liable in this state upon the same without regard to the mortgage or foreclosure proceedings, and that the provisions of the California code referred to did not apply to or bar this suit nor apply to the note or endorsements in question.

We think the trial judge fell into error through a failure to consider the exact character of the contract sued upon. That contract was evidenced by the signing of the names of the defendants upon the note at the time of the transfer in this state. Whether or not they intended to become liable for the payment of the note is a matter of no consequence, as

their legal liability is determined not by their intent but by the effect which the law attributes to their act. That effect is to be determined by the law of New Jersey. The cases are collected in 7 *Cyc.* 836. It is sufficient to refer particularly to what was said by Chief Justice Marshall in *Slacum* v. *Pomeroy,* 6 *Cranch* 221, and by the same distinguished court in the later case of *Musson* v. *Lake,* 4 *How.* 262 (at *p.* 278). The same rule has been adopted in this state. In *Freese* v. *Brownell,* 6 *Vroom* 285, Justice Van Syckel, in dealing with a bill of exchange, said: "The drawer is liable according to the law of the place where the bill is drawn, and each successive endorser is liable according to the law of the place where he endorses—every endorsement being treated as a new substantive contract." The same doctrine was approved by the Court of Errors and Appeals in *Oliphant* v. *Vannest,* 29 *Id.* 162. Since the contract of the defendants was an independent contract, its validity and effect is to be determined not only by the law of this state, where it was made, but by that law at the time when it was made. It is unnecessary to determine whether such a note was negotiable prior to 1902 since at the time the note was transferred the Negotiable Instruments act was in force. By section 2 of that act the instrument sued upon was negotiable notwithstanding the fact that it contained provisions for payment with interest payable semiannually, and a provision that upon default the whole sum should become immediately due and payable at the option of the holder, and that it was to be paid with an attorney's fee. Section 63 enacts that a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. By virtue of these sections the contract was a contract of endorsement. This contract of endorsement was entirely distinct from the contract of the maker to pay the note and from the debt arising against the maker by reason thereof. It is only by virtue of the act of 1855, which now appears as section 29 of the Practice act, that maker and endorser can be included in a single action. *Craft* v. *Smith,* 6 *Id.* 302. A

moment's reflection will show why this is so. The contracts of the maker and of the endorser are of very different character; that of the maker is an absolute contract to pay the money when due; that of the endorser is (1) a collateral contract of warranty by which, under section 66 of the Negotiable Instruments act, which is intended to be a codification of the existing law, he warrants that the instrument is genuine and in all respects what it purports to be, that he has a good title to it, that all prior parties had capacity to contract, that the instrument at the time of his endorsement is valid and subsisting; and (2) a contingent contract by which, in addition, he engages that on due presentment it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent endorser who may be compelled to pay it. It is obvious that in neither aspect is this contract of the endorser a debt or a right secured by the mortgage upon real estate given by the maker of the note to secure his liability, and his liability alone, for at the time the mortgage was given the liability of the endorsers of the note had not yet come into existence. It did not even become contingent until May, 1903, nearly two years after the note was given, and did not become a fixed liability until the presentment of the note for payment, its dishonor and the notice thereof given the next day as the law requires. It is, therefore, quite clear that the judge was in error in holding that the plaintiff was barred of recovery by reason of any provision of the California code. It is not even found as a fact, and we doubt if it be a fact, that these defendants could in any way have been made parties to the foreclosure suit in California.

It is, however, suggested that there may be a difficulty growing out of the alleged extension of the time of payment. The court did not find as a fact that the time of payment had actually been extended, but merely that in the assignment of the mortgage it was stated that the time of payment of the mortgage had been extended. Such a statement, however, is not equivalent to a finding of the fact, for whether there had

been an extension of the time of payment depended upon an agreement to that effect between the debtor and creditor, and while the statement by the creditor that he had extended the time of payment might be evidence, it would be nothing more; it is quite possible that a case might arise in which it would not even be evidence, since the holder of a note due on a certain date and secured by mortgage, who had failed to present the note for payment at the bank where payable, would find it to his interest to declare that the time of payment had been extended by agreement. If, however, we accept this statement of the defendants as the equivalent of a finding of fact, they do not escape liability, for it would be inadmissible for them to show that the contract was other than that which appears from the written instrument itself. *Johnson* v. *Ramsey,* 14 *Vroom* 279; *Kling* v. *Kehoe,* 29 *Id.* 529. This rule was cited with approval by the Court of Errors and Appeals in *Middleton* v. *Griffith,* 28 *Id.* 442 (at *p.* 448). Section 68 of the Negotiable Instruments act has not altered it, for that goes no farther than to permit evidence to show that endorsers have agreed to be liable in an order different from that in which they endorse.

The view taken by the learned trial judge that the action was not maintainable by the plaintiff in his representative capacity is quite untenable. The settlement of the California portion of the estate under the ancillary letters granted to the administrator with the will annexed in that state could not affect either the rights or the liabilities of the executor in New Jersey. The proper decree of the California court was to decree that the balance, after paying the claims in that state, be sent to the executors in New Jersey for distribution. 3 *Wms. Ex.* (*6th Am. ed.*) 1763, 1767, *note m; Banta* v. *Moore,* 2 *McCart.* 97; *Neilson* v. *Rusell,* 47 *Vroom* 655. In fact the finding of the court in this case was that the California court directed the ancillary administrator to distribute the decedent's estate to the plaintiff herein. If this were not so, however, the note was endorsed by the defendant Ella J. Gibbs, the payee, by an unqualified endorsement. All the subsequent endorsements might be stricken out by the plaint-

iff (Negotiable Instruments act, § 48), and thereupon the instrument became payable to bearer under section 34.

The facts found in this case by the court establish the right of the plaintiff to recover the unpaid balance of the note, and since the case comes before us upon special findings the plaintiff is entitled to enter final judgment in this court upon having his damages properly assessed in the usual way. This disposes of the case finally upon the merits, and the plaintiff is entitled to costs in the court below, but not in this court. *Lehigh Valley Railroad Co.* v. *McFarland,* 15 *Vroom* 674.