Essex County Court of Common Pleas.

RAYMOND-COMMERCE CORPORATION, A CORPORATION, PLAINTIFF, v. BARNETT WARNER, DEFENDANT.

Decided December 13, 1938.

For the defendant, *Meyer M. Semel.*

For the third party, *George H. Rosenstein.*

HARTSHORNE, C. P. J. Plaintiff sues defendant for rent due under a lease. Defendant answers, setting up as a separate defense, that he was in charge of the headquarters of the New Jersey Institute of Wine and Spirit Distributors, Inc., as their executive secretary, such headquarters being the premises covered by the above lease, and that such lease was entered into by defendant with plaintiff at the direction of the Institute. He further alleges that the Institute wrongfully discharged him as its executive secretary, refusing to pay his salary, which helped defendant pay the rent to plaintiff. Defendant accordingly asks that the Institute be made a party defendant to the action on the lease.

But there is no allegation that plaintiff knew of these dealings between defendant and the Institute, or in anywise accepted the Institute as a tenant, either in lieu of defendant or jointly with defendant. In this action on the lease, the

Institute is, therefore, liable to plaintiff, if at all, solely as an undisclosed principal. It is well settled that the party dealing with an agent, who acts for an undisclosed principal, can, after he knows the facts, elect whether to hold the one or the other, but he cannot hold both. *Yates* v. *Repetto* (*Court of Errors and Appeals*), 65 *N. J. L.* 294; 47 *Atl. Rep.* 632.

Since the Institute is not mentioned in the lease, the basis of the action, the Institute cannot be held liable thereon till plaintiff so elects. This election has not been made. At defendant's instance, plaintiff has merely consented to *defendant's* application for leave to add the Institute. Hence, the Institute is not a party to the controversy over the performance of the lease. It is only concerned, so far, with the entirely different question of its responsibility to pay defendant his salary as its executive secretary, this question apparently hinging on the propriety of its discharge of defendant, a matter with which plaintiff obviously has no concern.

Defendant, nevertheless, contends that he has the right to join defendant, not for the purpose of counter-claim or set-off, but under two statutes, the first, section 6 of the Practice act of 1912 (*Pamph. L.* 1912, *ch.* 231), the second, a practice provision enacted in 1933 (*Pamph. L.* 1933, *ch.* 283), both now embodied in the Revised Statutes as *R. S.* 2:27-25 and *R. S.* 2:27-29, respectively:

"Subject to rules, any person may be made a defendant, who jointly, severally or in the alternative is alleged to have or claim any interest in the controversy or any part thereof adverse to the plaintiff, or whom it is necessary to make a party for the complete determination or settlement of any question involved."

"Where in an action at law sounding in contract, any party thereto alleges, and it appears that some other person not then a party to the action is liable for the claim made against such party in the action, the court may on application of such party in the action, make an order adding such other person as a party defendant in the action * * *."

The question, essentially, is this: Can defendant, under either of such statutes, join a third party, with whom defend-

ant has a controversy, arising in part originally from the controversy between plaintiff and defendant, but with which third party, plaintiff now has no controversy? Or are such statutes intended to permit a defendant to join only such third parties as are directly involved in the existing controversy between plaintiff and defendant? The present situation falls in the first class. A simple example of the second class would be the application by the defendant, an endorser on a note, to join the maker, who had been omitted by plaintiff.

No previous decision in point construing the 1933 statute has been found. But in view of its enactment shortly after the decision of *Second National Bank and Trust Co.* v. *Pittenger,* 11 *N. J. Mis. R.* 321; 165 *Atl. Rep.* 634, it seems probable that it was enacted as a result of the note situation, similar to that above alluded to, which was dealt with in such case. Note that in the 1912 statute, the third party must have an interest "adverse to the plaintiff" in the controversy, *i. e.,* the controversy between plaintiff and defendant, or the addition of the third party must be necessary "for the complete determination or settlement of any question involved," presumably in such controversy between plaintiff and defendant. Clearly, the Institute in the instant case has no such interest, for it is no party to the lease, and is not now held thereon as an undisclosed principal. Similarly, in the 1933 statute, the third party must be "liable for the claim made against" the defendant applying for the joinder. But the claim made against defendant is on the lease, and, as seen above, the Institute under the present circumstances is not liable on the lease.

In addition, the above appears consonant with the intent of the Practice act as a whole. For the first of the above-quoted provisions was originally a part of section 6 of the Practice act of 1912. While such provisions refer to the joinder of additional parties, the balance of such section refers to the similar joinder of separate causes of action: "The plaintiff may join separate causes of action against several defendants if the causes of action have a common question of law or fact and arose out of the same transaction or series of

transactions." *R. S.* 2:27-38. See, also, *R. S.* 2:27-24, as to the voluntary joinder of parties. As to the intent of these provisions, rule 13, as enacted with the Practice act in 1912, is illuminating. This provides:

"The transactions referred to in sections four and six of the Practice act (1912) include any transactions which grew out of the subject-matter in regard to which the controversy has arisen; as, for instance, the failure of a bailee to use the goods bailed for the purpose agreed, and also an injury to them by his fault or neglect; the breach of a covenant for quiet enjoyment, by the entry of the lessor, and also a trespass to goods committed in the course of the entry; or several torts committed simultaneously, as a battery accompanied by slander."

While this merely explanatory rule no longer appears in our Supreme Court rules, doubtless as unnecessary, it is indicative of the intent of the statute itself as originally enacted and still in existence. On this point, prior decisions are few. But in *Murphy* v. *Patten,* 35 *N. J. L. J.* 338, even where plaintiff claimed the third-party defendant was liable to him, as is not so in the case at bar, his joinder was sustained only on the condition that the controversy grew out of the same transaction, and that there was a common question of law or fact. And in *First National Bank* v. *Merchants Trust,* 6 *N. J. Mis. R.* 31; 140 *Atl. Rep.* 582, the 1912 act was clearly construed more narrowly than as contended for by defendant here. Furthermore, it is well known that these provisions of the 1912 Practice act were based upon the similar provisions of the English and Connecticut rules. As to their meaning, the following cases are illustrative:

The owners and tenants of two adjoining houses may join in one action for damages for a common nuisance or other injury to their respective properties, if caused by the same acts of the same persons. *House Property Co.* v. *Horse Nail Co.,* 20 *Ch. Div.* 190. If a committee of persons be libelled collectively as a body, they may all join in one action. *Booth* v. *Briscoe,* 2 *Q. B. D.* 496. Persons separately induced to take debentures on the faith of untrue statements contained in the

same prospectus may join as plaintiffs. *Brincobier* v. *Wood* (1899), 1 *Ch. Div.* 393. But, if A defames B on one occasion, and defames C on another, B and C cannot join in one action against A, even though the charges be "historically" connected; for each slander is a separate "transaction." *Sandes* v. *Wildsmith* (1893), 1 *Q. B.* 771. And when a plaintiff sues in his personal capacity, and seeks other relief on behalf of himself and all other shareholders in a company, he cannot join these causes of action, unless they show, not only a common question of law or fact, but also that they arise out of the same transaction. *Stroud* v. *Lawson* (1898), 2 *Q. B.* 44.

In none of these cases do we find that the court has permitted the addition of an issue, not involved in the original cause of action. In short, the test as to the propriety of the joinder of causes of action is whether the law, or the evidence of the facts, will be the same, or so nearly the same, in the two cases as to admit of a just and convenient joint trial. *Hartshorne C. H. Practice Act* 1912, *p.* 10. And while the joinder of causes of action is a different matter than the joinder of parties, so that the specific principles governing the two are not identic, the general purpose, to obtain a just and convenient trial, applies to both. *R. S.* 2:27-31. More specifically, the purpose of the above provisions, as to joinder of third-party defendants, is to permit a complete determination of the original controversy which plaintiff has submitted to the court for decision, not to inject a new controversy, with which plaintiff is not concerned, into plaintiff's cause of action.

Defendant's motion will be denied.